HENRY L. GRIFFIN *v.* STATE OF INDIANA

[No. 2-176A35. Filed February 15, 1978.]

Joseph P. Allegretti, of Hammond, for appellant.

Theodore L. Sendak, Attorney General, Joseph J. Reiswerg, Deputy Attorney General, for appellee.

GARRARD, J.— Henry L. Griffin was convicted, after a trial by jury, of "obtaining control over stolen property knowing the property to be stolen by another and intending to deprive the owner of its use." IC 1971, 35-17-5-3(1)(f). The trial court sentenced Griffin to an indeterminate sentence of not less than one (1) nor more than ten (10) years. We find no merit in the several contentions that Griffin urges require reversal. We affirm.

The record, viewed in the light most favorable to the state, discloses the following. At approximately 4:00 a.m. on May 29, 1975 Officer Jerry Toler of the Highland Police Department noticed Griffin driving an Indiana licensed vehicle that had no safety inspection sticker. He followed the vehicle for a short time before turning on his red light. Griffin pulled the car off the highway, got out and met Toler, who had exited his vehicle, at the front of the police car. Toler asked Griffin for his driver's license and the car's registra-

tion. Griffin stated that he had an Illinois driver's license but that it, had been stolen, along with his wallet, in Chicago the previous day. Toler then asked for Griffin's name and date of birth so he could confirm that Griffin was licensed to drive in Illinois. Griffin appeared to have difficulty in giving the correct spelling of his name and his date of birth. At this point Toler ran a computer check on the license plate of the car Griffin was driving. The plate was registered to a 1969 Buick four-door sedan owned by one Roberto Ruliso in East Chicago, Indiana. The car Griffin was driving was a 1968 Buick Riviera. With this information Toler determined that Griffin had to be placed in custody for driving without an operator's license and for false registration of a vehicle.

Toler then called a tow truck and began to examine the interior of the vehicle. He testified that it was standard procedure to inventory a vehicle prior to its being towed to the police station. He observed, in plain view, a "two station grinder" in the back seat of the car in addition to numerous items of clothing. He asked Griffin who owned the grinder. Griffin stated that he was the owner and that he had purchased it the previous day in Chicago. Toler then searched under the clothes in the back seat and found a gold tool box with tools, a camera, a radio and additional tools not in the tool box. Toler testified that at the time of the search Griffin was in the custody of Officer Hubbard who had come to the scene as "backup" for Toler. He further stated that Griffin was "very courteous" and that he did not feel threatened by Griffin.

The car was towed to the station where the items that Toler had inventoried were removed from the car. In addition, Toler opened the trunk of the car and found more tools, grinders, two tool boxes, a camera and several radios. All items removed from the vehicle were tagged and held by the police.

On May 30th at approximately 8:45 p.m. Roger Robb noticed that many of his tools, including a gold tool box and a grinder, were missing. He notified the police that a theft had occurred. He stated that he had last seen the missing tools at 1:00 a.m. May 29th and that they were valued at $300.00. Robb was called to the police station to determine whether he could identify his missing tools among

those being held. He did so and, after photographs were taken, the tools were returned to him. After the police determined that the tools identified by Robb were the ones taken from Griffin's car, the information charging Griffin with theft was filed.

*I. Claim of Unlawful Search*

It is argued that Officer Toler unlawfully searched the car Griffin was driving without probable cause and without the exigent circumstances necessary to justify a warrantless search. We agree that Griffin's arrest for a traffic offense would not create probable cause for an extended search of the vehicle. *Paxton v. State* (1970), 255 Ind. 264, 263 N.E.2d 636. It is also clear that a warrantless search was not required to assure the arresting officer's safety. *Chimel v. California* (1969), 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685. Nonetheless, we find no constitutional infirmity in Toler's search of the vehicle as his purpose was simply to inventory valuables in a vehicle that was lawfully impounded and about to be towed to the police station for storage. *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L. Ed. 2d 1000.

The evidence presented at the hearing on the motion to suppress indicates that Toler was clearly warranted in impounding the car Griffin was driving. IC 1971, 9-9-5-5 (Burns Code Ed.) states:

> "Motor vehicles without number plates — Taken into custody. — Any representative of the secretary of state, or any state police officer or any officer or member of any municipal police department who may discover any motor vehicle or motor bicycle without the proper registration and license plates attached, shall take such motor vehicle or motor bicycle into his custody and may cause such motor vehicle or motor bicycle to be taken to and stored in a suitable place until the legal owner thereof can be found or the proper registration and license plates have been procured."

Once Toler determined that the license plates were not issued to the car Griffin was driving, he was authorized to seize the vehicle. Further, the car was to remain in police custody for an indefinite period of time. Until Griffin showed that the vehicle was properly in his possession it was possible that the vehicle was stolen. If so, Toler could not know how long it would take to identify the car's

owner. On these facts, Toler testified that it was standard police procedure to inventory the vehicle prior to its being towed to the police station.[1]

In *Opperman, supra,* the defendant's vehicle was towed after it remained parked in a restricted zone for several hours. From outside the car the police observed items of personal property on the dashboard, back seat, and back floorboard of the car. Pursuant to police procedures these items were removed and inventoried. In addition, the police searched the unlocked glove compartment. There a plastic bag containing marijuana was found and the defendant was charged with unlawful possession. In approving the search of the glove compartment the Court stated:

"The Vermillion police were indisputably engaged in a caretaking search of a lawfully impounded automobile. *Cf. United States v. Lawson,* 487 F.2d 468, 471 (CA 8, 1973). The inventory was conducted only after the car had been impounded for multiple parking violations. The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car. As in *Cady,* there is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive.

On this record we conclude that in following standard police procedures, prevailing throughout the country and approved by the overwhelming majority of courts, the conduct of the police was not 'unreasonable' under the Fourth Amendment." [footnote omitted] 428 U.S. 364, 375-6, 96 S. Ct. 3092, 3099-3100, 49 L. Ed. 2d 1000, 1009.

In the present case, it is equally clear that the seizure and inventory of the vehicle was prompted by Griffin's arrest and the necessity for determining the right to possession of the vehicle. There is nothing to suggest that the seizure of the vehicle was a mere pretext for the ensuing search. Indeed, Toler did not determine that

---

1. Although Toler stated that a vehicle was inventoried *whenever* it had to be towed, we need not consider whether in some circumstances an inventory would be unreasonable even though towing was required.

the plates displayed were properly issued to another vehicle, thereby necessitating the seizure under IC 1971, 9-9-5-5 (Burns Code Ed.), until after he had stopped and questioned Griffin.

Further, the inventory search was routine. Where the search is routine it is limited by its purpose, *i.e.*, protecting the owner's property and avoiding the occasional danger that may arise in impounding an unsearched vehicle. In addition, the necessity of procuring a warrant is greatly diminished because the inventory is not conducted to uncover crime; there is "no significant danger of hindsight justification" for the search; and there is no discretion in the arresting officer as to whether a search is required.[2] *Opperman, supra,* 428 U.S. 364, 383, 96 S. Ct. 3092, 3103-4, 49 L. Ed. 2d 1000, 1013-14 (concurring opinion).

On these facts, substantially similar to those in *Opperman,*[3] we conclude that Toler's routine inventory search of the vehicle was reasonable and therefore consistent with the constitutional commands against unreasonable searches and seizures.

*II.  Admission of Exhibits Into Evidence*

The state introduced into evidence two photographs of the grinder, tool box and tools that had been taken from Robb's garage. Griffin objected to the introduction of these exhibits upon the basis that a proper foundation had not been made to establish their relevancy. The gist of his argument is that Officer Toler, who removed the tools from Griffin's vehicle, was not present when Officer Mitchell took the photographs and there was no basis for saying the tools photographed were the same tools removed by Toler. However, immediately before the photos were offered Officer Mitchell testified without objection that the tools in the photograph

2. In *Opperman* the inventory was conducted "strictly in accord with the regulations of the Vermillion Police Department." Although the regulations of the Highland Police Department are not before us, Toler's testimony that the inventory was standard procedure and his notation of the items removed sufficiently establish the routine nature of the search.

3. Unlike *Opperman*, Griffin was present at the time of the search. However, his failure to have a driver's license or auto registration and the information that the license plate on the auto was registered to a different vehicle create the same essential basis for impoundment and therefore inventory.

were those taken from Griffin's car. Accordingly, the exhibits were properly introduced.

### III.  Sufficiency of Evidence

Griffin contends that the evidence was insufficient to establish that he knew the tools found in his possession were stolen. The state's evidence is entirely circumstantial. It has long been held that mere possession of stolen goods shortly after a theft has occurred is not sufficient circumstantial evidence to sustain a conviction for knowingly receiving or possessing stolen property. *Young v. State* (1975), 264 Ind. 14, 332 N.E.2d 103; *Miller v. State* (1968), 250 Ind. 338, 236 N.E.2d 173; *Wertheimer v. State* (1929), 201 Ind. 572, 169 N.E. 40. The question presented is whether there is sufficient other circumstantial evidence to support the jury's finding that Griffin knew the tools were stolen. When the sufficiency of evidence is challenged on appeal we consider the evidence in the light most favorable to the verdict, including all reasonable inferences that might be drawn to sustain the verdict. If there is substantial evidence of probative value to support the jury's determination, the conviction will not be set aside. *Collins v. State* (1977), 266 Ind. 430, 364 N.E.2d 750.

The state argues that Griffin's "suspicious" behavior, *i.e.,* his evasive answers regarding his name and date of birth, and Officer Toler's testimony that he appeared nervous, could properly have been considered by the jury in determining that Griffin knew the tools were stolen. We agree. However, merely equivocal behavior which is "suspicious" would not be sufficient to sustain a conviction. In *Miller v. State, supra,* the defendant was driving a borrowed car that contained stolen goods. When he noticed that he would be required to stop for a vehicle safety check station conducted by the police, he made a u-turn to avoid confronting the police. After being stopped he lied to the police about his purpose in borrowing the car he was driving. In reversing the conviction for possession of stolen goods the court held that under all the evidence there was demonstrated only a possibility of guilt. In *Wilson v. State* (1973), 159 Ind. App. 130, 304 N.E.2d 824, the defendant was driving a stolen automobile when it was involved in an accident. At trial he

testified that he had no knowledge of the theft and had assumed that his companion had borrowed the vehicle. The sole evidence contradicting this testimony was that he had lied to the police investigating the accident, telling them that he was a passenger at the time. Again it was concluded that this suspicious activity raised a mere possibility of guilt.

However, the present case is distinguishable from *Miller* and *Wilson*. Here Officers Toler and Mitchell testified that Griffin told them he had purchased the tools the day prior to his arrest in Chicago. It is clear, however, that the tools could not have been taken from Robb's garage until after 1:00 a.m. on May 29th, 1975; Griffin was arrested approximately three hours later at 4:00 a.m. Thus, Griffin's explanation for his possession of the goods was plainly untrue. Unlike *Miller* and *Wilson*, Griffin's untruth was not collateral to the crime for which he was charged. It dealt directly with the tools that had so recently been stolen. From this fact, Griffin's behavior at the time of the arrest, and the circumstances involving the vehicle, the jury could reasonably infer that Griffin knew the tools were stolen. Therefore, its finding must be sustained.

## IV. Prosecutorial Misconduct

Griffin contends that the trial court erred in denying a motion for mistrial predicated upon prosecutorial misconduct. At trial the deputy prosecutor commented on Griffin's failure to produce witnesses corroborating his statement to the police that the tools in the car had been purchased in Chicago on the day prior to his arrest. The comment was made during oral argument, apparently in response to defense counsel's assertion that the state had failed to adequately investigate the facts surrounding the theft for which Griffin was charged. The statement complained of follows:

"BY MR. CARAS:   ... In talking about powers the state would be using to investigate the testimony brought out that the defendant admittedly the defendant does not have to prove anything. Testimony brought out that he bought the equipment from Jewtown the night before on the 28th. Defense like I say

> has subpoena power and can subpoena anybody they want."

Defense counsel immediately objected to this comment and moved for a mistrial. The trial court denied the motion and immediately thereafter stated:

> "BY THE COURT: Ladies and Gentlemen of the jury, you are admonished to totally disregard the prosecutor's comment with regard to the defendant's subpoena power that is not to be considered by you in anyway and in your consideration of the case before you."

Despite this admonition, it is urged that the comment represents prosecutorial misconduct requiring reversal.[4]

In considering whether a trial court erred in refusing to grant a mistrial, we may reverse only if an abuse of discretion is shown. *Biggerstaff v. State* (1977), 266 Ind. 148, 361 N.E.2d 895 (and cases cited therein). Such is the case when prosecutorial misconduct places the defendant "in a position of grave peril to which he should not have been subjected." *White v. State* (1971), 257 Ind. 64, 78, 272 N.E.2d 312, 320. In applying this standard we consider the probable persuasive effect of the misconduct on the jury's decision. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. Where, as here, the jury was admonished to disregard the prosecutor's comment it must appear that the misconduct could not have been cured by the admonition before we may find an abuse of discretion. *White v. State, supra.*

While we agree that the deputy prosecutor's statement was improper, we cannot conclude that Griffin was placed in "grave peril"

---

4. It is not specifically argued that the comment amounted to a violation of the rule in *Griffin v. California* (1965), 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106, and IC 1971, 35-1-31-3 (Burns 'Code Ed.) prohibiting prosecutorial comment on the defendant's failure to testify. However, even if this issue were properly before us, we would find any error harmless beyond a reasonable doubt. Where, as here, the comment is ambiguous in implicating a defendant's right to remain silent, is an apparent response to argument made by the defense, and the trial court's admonition is timely and specific, the accused's constitutional and statutory rights have been adequately protected. *See Rowley v. State* (1972), 259 Ind. 209, 285 N.E.2d 646; *Hadley v. State* (1975), 165 Ind. App. 416, 332 N.E.2d 269; *Jones v. State* (1973), 155 Ind. App. 536, 293 N.E.2d 545.

thereby. The comment representated but an isolated and apparently inadvertent instance. The trial court's admonishment followed the comment immediately and was unambiguous in directing the jury to disregard the comment in their deliberations. Even though the state's case rested entirely on circumstantial evidence, we cannot say the comment had any substantial persuasive effect on the jury's decision. *See Roberts v. State* (1976), 265 Ind. 439, 355 N.E.2d 243. As a result we cannot reverse Griffin's conviction on this issue.

## V. Defective Verdict

Finally, it is asserted that the verdict rendered by the jury was defective and that the trial court erred in failing to have it corrected. The form of verdict given to the jury stated:

> "We, the Jury, find the defendant, Henry L. Griffin, guilty of Count II of theft of property, stolen by another of $100.00 or more in value, that he shall be fined in the sum of _____ (not exceeding Five Thousand Dollars ($5,000)) or imprisonment for not less than one (1) nor more than ten (10) years, or both."

The jury filled in the blank with the words "$1,000 only." It is argued that this amounts to an implicit finding of innocence insofar as the jury believed that Griffin should only be fined, and therefore is a substantial defect in the verdict. If so, the trial court should have returned the verdict to the jury and required that it be reconsidered. *Gilmore v. State* (1951), 229 Ind. 359, 98 N.E.2d 677; *Moore v. State* (1947), 225 Ind. 357, 75 N.E.2d 193.

While it is plain that the trial judge has a duty to have a substantially defective verdict corrected, it is equally clear that words added to a verdict will be considered surplusage if they are not inconsistent with a finding of guilt. *Rush v. State* (1973), 260 Ind. 87, 292 N.E.2d 599; *Payton v. State* (1965), 246 Ind. 401, 206 N.E.2d 143. It is only where there is inconsistency between the finding of guilt and the words used to express that finding that a reversal is required.

We find no such inconsistency in this case. The form issued to the jury invited them to fix the amount, if any, the defendant should be fined, not exceeding $5,000, if he was found guilty. The word

"only" can reasonably be construed as a limitation on the fine assessed. That is, the fine should not exceed $1,000. More significantly, it is not inconsistent with the jury's finding of guilt. A similar problem occurred in *Burnett v. State* (1954), 233 Ind. 651, 122 N.E.2d 468. In that case the defendant was charged with grand larceny, but was found guilty of petit larceny. After two defective verdicts were rejected by the trial court the jury rendered the following verdict:

> "We, the jury finds [sic] the defendant Glenn Burnett, guilty of petit larceny as charged in the affidavit and find his age to be 35 years, and that he pay a fine in the sum of none dollars." 233 Ind. 651, 653, 122 N.E.2d 468, 469.

The trial court sentenced the defendant to an indeterminate sentence of not less than one nor more than five years. On appeal it was held that the words "that he pay a fine in the sum of none dollars" were surplusage, since they had no bearing on the finding of guilt.

Unlike *Burnett, supra,* the jury in this case was instructed to assess the amount of any monetary fine. The addition of the word "only" was consistent with that function, and can only be harmonized with a finding of guilt. We conclude that it was added only as a limitation on the penalty to be imposed and was not an implicit finding of innocence of the offense charged. *Abel v. State* (1975), 165 Ind. App. 664, 333 N.E.2d 848.

Affirmed.

Staton, P.J. and Buchanan, J. (sitting by designation) concur.

NOTE—Reported at 372 N.E.2d 497.