**Donald Duane CHOATE, Appellant**
**(Defendant below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff below).**

No. 183S18.

Supreme Court of Indiana.

May 7, 1984.

Randall R. Shouse, Jasper, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Donald Duane Choate, was convicted of receiving stolen property, a Class D felony, Ind.Code § 35–43–4–2(b) (Burns 1983 Supp.), and was found to be a habitual offender, Ind.Code § 35–50–2–8 (Burns 1983 Supp.). The defendant was sentenced to a term of thirty-two years imprisonment. In this direct appeal the following nine issues have been raised:

1. Whether the trial court erred in giving certain of the state's instructions and in failing to give certain of the defendant's;

2. Whether the trial court erred in admitting certain physical evidence;

3. Whether the trial court erred in admitting hearsay evidence;

4. Whether the trial court erred in permitting the jury to take evidence into the jury room;

5. Whether the trial court erred in permitting the state to amend the information shortly before trial;

6. Whether the trial court erred in not admonishing the jury when they separated after the felony portion of the trial;

7. Whether the trial court erred in failing to grant a mistrial or a continuance when a juror became ill;

8. Whether the evidence was sufficient to support a conviction for receiving stolen goods; and

9. Whether the evidence was sufficient to establish the finding that the defendant was a habitual offender.

The facts most favorable to the state reveal that in March of 1980, a Leo Merkley told the defendant that he needed a trailer to use in hauling Merkley's bulldozer. The defendant indicated that he could probably find one. On March 18, 1980, a trailer was stolen from a construction site near Patoka. The defendant had worked for the construction company that owned the trailer. On March 19, the defendant sold a trailer to Merkley for $1,250. Merkley later received a bill of sale dated March 19, 1980, and signed by William Thrash as the seller and notarized by Joseph Akers. The police were unable to confirm that either Thrash or Akers existed. An employee of the construction company later spotted the trailer and notified the State Police. Subsequent investigation established that the serial number on the trailer was the same as the number on the trailer stolen from the construction site.

## I.

■ The defendant claims several errors in respect to the final instructions given to the jury. The first of these stems from an instruction which stated in part that:

"A 'reasonable doubt' is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all the evidence and circumstances in the case. It should be a doubt based on reason and common sense and not a doubt based on imagination or speculation."

The defendant contends that the words "or lack of evidence" should have been inserted after the word "evidence" in the above instruction. The defendant asserts that the failure to modify the instruction gave the impression to the jury that he bore the burden of proving his own innocence and of proving reasonable doubt. We note, however, that another instruction given to the jury stated that "if from the whole evidence or lack of evidence any material fact essential to conviction has not been established to your satisfaction beyond a reasonable doubt, you should acquit the Defendant." Further instructions clearly stated that the state was required to prove its case beyond a reasonable doubt. Instructions to the jury should be read as a whole and are to be construed together. *Davidson v. State*, (1982) Ind., 442 N.E.2d 1076; *Cobb v. State*, (1980) Ind., 412 N.E.2d 728. Reading the instructions as a whole, we cannot say the trial judge erred in refusing to modify the instruction.

■ The defendant also claims the trial court erred in reading state's instruction number 6 to the jury. This instruction, which dealt with reasonable doubt, contained language that the "bare possibility that the defendant may be innocent does not raise a reasonable doubt." The defendant contends that the word "mere" should have replaced the word "bare" and that the failure to make the change once again left the impression with the jury that the defendant had to prove his innocence. We have previously found that similar language in an instruction did not prejudice the defendant when the instruction was juxtaposed with an instruction charging the jury not to act upon speculation. *Harrison v. State*, (1978) 269 Ind. 677, 382 N.E.2d 920; *Carter v. State*, (1977) 266 Ind. 196, 361 N.E.2d 1208. The jury in this case was instructed not to act upon speculation. Furthermore, we cannot say that the lan-

guage used in state's instruction number 6 misled or confused the jury. There was no error in the giving of this instruction.

■ The next allegation of error concerning instructions stems from state's instruction number 5, which stated:

"You are instructed that the exclusive possession of stolen goods as well as a knowledge that the goods were stolen may be proved by circumstantial evidence."

The defendant asserts that this instruction was essentially the "exclusive possession rule," which does not apply to the offense of receiving stolen property. *Strode v. State*, (1980) Ind.App., 400 N.E.2d 183; *Griffin v. State*, (1978) 175 Ind.App. 469, 372 N.E.2d 497. Thus, in *Griffin*, the Court of Appeals stated:

"It has long been held that mere possession of stolen goods shortly after a theft has occurred is not sufficient circumstantial evidence to sustain a conviction for knowingly receiving or possessing stolen property."

175 Ind.App. at 475, 372 N.E.2d at 501. But state's instruction number 5 does not state that the conviction for receiving stolen property may be sustained solely by mere possession of stolen goods; rather, it allows the possession of the goods and the knowledge that they were stolen to be proved by circumstantial evidence. This is a correct statement of law, and it was not error to give this instruction to the jury.

■ The defendant next alleges that the trial court improperly refused his tendered instruction number 2, which stated that the terms "innocent" and "not guilty" were not synonymous. While the terms do not necessarily mean the same thing, the trial judge did not exceed his discretion in refusing to give this instruction. The trial judge may well have determined that defendant's tendered instruction number 2 would confuse and mislead the jury, especially since it stated that "you do not have to believe the defendant is innocent in order to return a verdict of not guilty." There was no error in refusing to give this instruction.

■ In addition to alleged errors in the instruction for the underlying felony portion of the trial, the defendant claims error in the instructions given at the conclusion of the habitual offender portion of trial. The defendant contends that the jury was improperly informed as to its role in the habitual offender phase since the trial judge refused three of the defendant's tendered instructions, numbers 4, 5, and 6. Defendant's tendered instruction number 4 dealt with Indiana's constitutional prohibition against vindictive justice, stating in part that:

"If after considering all of the evidence presented in this case, you find that the habitual offender statute, as applied to the defendant, is not founded on principles of reformation, then you may take that finding into consideration in rendering your verdict."

Defendant's tendered instruction number 5 stated:

"The Constitution of the State of Indiana provides that you are the judges of the law as well as the facts. You can take the law as given and explained to you by the court, but, if you see fit, you have the legal and constitutional right to reject the same, and construe it for yourselves. Although you have the legal right to disagree with the court as to what the law is, still, you should weigh the instructions given to you in this case as you weigh the evidence, and disregard neither without proper reason."

Finally, defendant's instruction number 6 dealt with the constitutional prohibition against cruel and unusual punishment. We find that the refusal to give these instructions is not reversible error. To begin with, we agree with the state that neither instruction number 4 nor number 6 was applicable to this case. But even if they somehow were, the trial judge was quite correct in refusing these instructions. We have previously held that an instruction based on Article 1, § 18 of the Indiana Constitution is improper, since the reformation of convicted felons is a matter to be

considered by the legislature, not the jury. *Erikson v. State,* (1982) Ind., 438 N.E.2d 269; *Denson v. State,* (1975) 263 Ind. 315, 330 N.E.2d 734. Much the same rationale applies to the cruel and unusual punishment instruction. The jury's function in a habitual offender proceeding is to determine whether the defendant is a habitual offender as defined by statute. The issue of whether the statute infringes upon the Eighth Amendment is not one for the jury. Finally, while defendant's instruction number 5 was refused, the substance of this instruction was contained in another instruction. Thus it was not error to refuse to give the tendered instructions. *Davis v. State,* (1976) 265 Ind. 476, 355 N.E.2d 836.

■ The defendant lastly contends that the trial court improperly gave state's instruction number 3, since the defendant believes it contained an incomplete statement of the law. This instruction stated:

"A felony conviction means a conviction, in any jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one (1) year."

The defendant contends that the instruction should have been followed by the words "but it does not include a conviction with respect to which the person has been pardoned, or a conviction of a class A misdemeanor under section 7(b) of this chapter." *See* Ind.Code § 35–50–2–1 (Burns 1979 Repl.). We do not believe the omission of these words in any way prejudiced the defendant, especially in light of the fact that no evidence was presented to show that the crimes used to support the habitual offender charge were misdemeanors or were crimes for which the defendant was pardoned.

Therefore, we find the jury was properly instructed in both phases of the trial.

## II.

The defendant contends the trial court erroneously admitted certain exhibits, both in the felony portion and the habitual offender phase of trial. The first items of evidence that were allegedly improperly admitted were state's exhibits 10, 11, and 12. These three exhibits were photographs of an identification number hidden under the paint of the trailer. The defendant contends that the pictures were inadmissible because they did not accurately depict the condition of the trailer either at the time it was stolen or when it was discovered by police, since paint had to be removed by the police to reveal the number.

■ There was no error in the admission of these photographs. The exhibits were offered during the examination of Carl Shaw, a detective with the Indiana State Police. Shaw testified that he scratched off some paint on the trailer to reveal the secret number. The photographs were introduced to show the condition of the trailer as it existed when Shaw investigated it. They were not intended to show the trailer at the time it was stolen or discovered. The exhibits were merely cumulative of the witness's testimony. As such, we cannot say that the trial judge exceeded his discretion in admitting these photographs.

■ The defendant further contends the trial judge erred in allowing state's exhibits 13, 14, 15, and 16 to be admitted. These exhibits were also photographs of the trailer. The defendant's only objection to these photographs is that the word "Orangeville" was written on the back of each one. Carl Shaw testified after the exhibits were admitted that "Orangeville" referred to the place where the photographs were taken. Contrary to the defendant's contention, the exhibits were properly identified. Once again, we cannot say that the trial judge exceeded his discretion in admitting these exhibits.

■ The defendant next asserts the trial court erred in admitting state's exhibit number 27, which consisted of a series of documents from the Indiana Department of Correction and which was offered during the habitual offender portion of the trial. Initially, the defendant asserts that the exhibit was not properly authenticated. Under Ind.R.Tr.P. 44, official records such as

those at issue here are admissible only "by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy." *Id.* Here, the exhibit contained a sheet signed by Samuel E. Molter, the keeper of the records for the Department of Correction. This sheet certified that the documents comprising state's exhibit number 27 were true and correct copies of the record of the defendant. State's exhibit number 27 was properly authenticated under Ind.R. Tr.P. 44.

▬▬ The defendant also argues that two of the documents in this exhibit were not documents of which Samuel Molter was the keeper, since they were from the Indiana Parole Board rather than the Department of Correction. The defendant has overlooked the fact that the Parole Board is a·division of the Department of Correction. Ind.Code § 11-9-1-1 (Burns 1981 Repl.). Since Molter was the official keeper of the records of the entire Department, he would also be the keeper of records of one of the Department's divisions. Furthermore, even if we were to determine that Molter was not the keeper of records for the Parole Board, the admission of these two documents did not prejudice the defendant. Each simply stated that the defendant was no longer on probation. The crimes for which the defendant had been serving parole had been established by other properly authenticated documents in the exhibit. We find no error.

▬▬ The defendant lastly contends that state's exhibit number 27 was improperly admitted because one of the documents contains an admission of guilt, which was given by the defendant upon his admission to the Indiana Department of Correction in 1965. The defendant alleges that the admission of the document violated his right against self-incrimination. We find no such violation. The Fifth Amendment prohibits only compelled self-incrimination. *Estelle v. Smith*, (1981) 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359; *State ex rel. Keller v. Criminal Court of Marion County*, (1974) 262 Ind. 420, 317 N.E.2d

433. It is a personal right that attaches to the person, not to incriminating information. *Spears v. State*, (1980) 272 Ind. 634, 401 N.E.2d 331, *reh'g granted*, 272 Ind. 647, 403 N.E.2d 828. With these rules in mind, we find nothing in the record that shows the defendant was *compelled* to give incriminating testimony. In fact, the defendant testified that he never even made the statement. There was no constitutional violation in the admission of this exhibit.

### III.

The defendant next argues that certain testimony by Carl Shaw was hearsay and that the trial judge therefore erred in overruling his objections to the testimony. The first alleged error stems from the following testimony:

Q. "Okay. And what did you do after determining what the serial number was on this trailer?"

A. "I recorded that number on a scratch piece of paper and returned to my State Police vehicle and called that number in to the Jasper Indiana State Police Post to be entered as an inquiry as stolen into the National Crime Information Computer."

Q. "What response did you get?"

A. "I got ..."

The defendant then objected on hearsay grounds. After the objection was overruled, Shaw testified that a trailer with that serial number had been stolen.

▬▬ Hearsay is defined in our state as an extrajudicial declaration of another offered in court to prove the truth of the facts asserted therein, and thus resting on the credibility of a declarant who is not in court and not available for cross-examination. *Roberts v. State*, (1978) 268 Ind. 348, 375 N.E.2d 215. The testimony eventually given here was hearsay. The witness was using an out-of-court statement of another to show that a trailer with the same serial number was in fact stolen. Nevertheless, the admission of this testimony does not necessitate a reversal. First, we note that

while the defendant timely objected to the testimony originally, he failed to renew his objection when the witness actually gave his answer. More importantly, however, the same testimony complained of here was introduced, without objection, through another witness. Therefore, any error in the admission of this hearsay evidence was rendered harmless by the admission of similar evidence. *Gross v. State*, (1983) Ind., 444 N.E.2d 296; *Badelle v. State*, (1982) Ind., 434 N.E.2d 872.

■■■ The defendant also points to two other instances in which hearsay evidence was allegedly admitted, both occurring during the examination of Carl Shaw. Shaw testified as to his efforts to locate William Thrash and Joseph Akers, the two men named on the bill of sale. The defendant twice objected that certain testimony was hearsay. The record, however, shows that each time Shaw was asked whether *he* was able to locate Thrash or Akers. Shaw was merely testifying as to his own course of investigation and was not relying on an out-of-court statement. *See Morris v. State*, (1980) 273 Ind. 614, 406 N.E.2d 1187. Further, the witness was instructed not to testify as to what others told him during his investigation. There was no error in admitting this testimony.

### IV.

The defendant asserts the trial court erred in allowing the jury to take evidence into the jury room during the habitual offender portion of trial. The exhibits consisted of state's exhibit number 27, discussed in Issue II, number 28, which consisted of court records from Clay County relating to a prior felony, and number 29, which consisted of court records from Pike County relating to another prior felony. The defendant contends allowing the jury to take these exhibits into the jury room increased the likelihood that the jury would return of verdict of guilty on the habitual offender count.

■■■ The applicable standards concerning the trial court's decision to allow the jury to take exhibits into the jury room are contained in *Thomas v. State*, (1972) 259 Ind. 537, 289 N.E.2d 508. In *Thomas* we held that the decision rests with the discretion of the trial judge. Quoting § 5.1 of the Standards Relating to Trial by Jury, we noted the following were appropriate considerations in the trial judge's exercise of his discretion:

" '(1) whether the material will aid the jury in a proper consideration of the case;

" '(ii) whether any party will be unduly prejudiced by submission of the material; and

" '(iii) whether the material may be subjected to improper use by the jury.' "

259 Ind. at 540, 289 N.E.2d at 509.

Unlike the result in *Thomas*, we cannot say the trial judge exceeded his discretion in allowing the jury to view these exhibits after retiring for deliberation. As in *Jackson v. State*, (1980) Ind., 411 N.E.2d 609, the admission of the exhibits did not necessarily mean the jury gave them undue weight. The defendant here argues that he was prejudiced because state's exhibit number 27 contained the allegedly self-incriminating statement. We do not feel that this prejudiced the defendant. This statement was made after the conviction for burglary in 1965, and it had no bearing on whether the defendant was actually convicted, the question before the jury in the habitual offender portion of the trial. These three exhibits may have been helpful to the jury when they deliberated on whether the defendant was a habitual offender. Thus, we cannot say the trial judge exceeded his discretion, and we therefore cannot now reverse.

### V.

On the day the habitual offender hearing began, the trial judge allowed the state to amend the information. The amendment reflected that the defendant had been previously convicted of second-degree burglary; the original information stated that the defendant had been convicted of burglary. The trial court refused to grant the defendant a continuance. The defendant now con-

tends the trial judge exceeded his discretion by allowing the amendment and in not allowing the continuance.

■ Under the statute in effect at the time of this trial, an information could be amended at any time before, during, or after trial as long as the amendment did not prejudice the substantial rights of the defendant. Ind.Code § 35–3.1–1–5 (Burns 1979 Repl.) (repealed, Acts 1981, P.L. 298); *Barnett v. State*, (1981) Ind., 429 N.E.2d 625. The defendant here claims he was prejudiced because the amendment deprived him of the opportunity to assert, as a defense strategy, that the state could not prove the defendant had been convicted of burglary when the documentation showed convictions for second-degree burglary. We do not find this to be sufficient prejudice. The amendment here did not relate to the *status* charged; in either case the state still alleged the defendant was a habitual offender by virtue of two prior felonies. The amendment simply allowed the information to conform to the documentary evidence. *See Norris v. State*, (1979) 271 Ind. 568, 394 N.E.2d 144. There was no error in permitting the amendment.

■ Nor did the trial judge err in not allowing a continuance. The decision to grant or not grant a continuance is one best left to the discretion of the trial judge. *See* Ind.Code § 35–3.1–1–5 (Burns 1979 Repl.) (repealed, Acts. 1981, P.L. 298). While the defendant claims the refusal to allow the continuance left him unable to prepare himself, the record shows that well before trial the defendant was provided copies of the documents showing prior convictions for second-degree burglary. We find no abuse of discretion here.

Therefore, the defendant has not shown that his substantial rights were prejudiced by the trial judge's allowance of the amendment or by the denial of the continuance motion.

## VI.

The defendant next contends the trial court erred when it failed to admonish the jury upon separation between the felony and habitual offender portions of the trial. Because of the failure to admonish, the defendant moved for a mistrial at the beginning of the habitual offender portion of trial.

■ To begin with, the defendant did not object to the failure to admonish until the jury returned for the habitual offender portion of the trial, which was several days after the jury was dismissed on the felony portion. Generally, a timely objection must be made to the failure to admonish the jury. *Brown v. State*, (1964) 245 Ind. 604, 201 N.E.2d 281. Even if we were to find the defendant made a timely objection, the facts of this case do not require us to reverse, since the defendant has failed to show sufficient prejudice. After the defendant made his motion for a mistrial, the trial judge polled the jury to determine if any of them had discussed the case among themselves or had read anything about the case in the paper. The jury was polled as a group, and the jurors indicated they had not read about the case. Contrary to the defendant's assertion, there was no need to poll the jurors individually outside the presence of other jurors. The group interrogation failed to disclose any exposure to adverse publicity, and there was no need for individual interrogation. *Shepler v. State*, (1980) Ind., 412 N.E.2d 62; *Lindsey v. State*, (1973) 260 Ind. 351, 295 N.E.2d 819. There was no reversible error.

## VII.

The defendant next contends the trial court erred when it failed to declare a mistrial or grant a continuance when a juror became ill during the habitual offender portion of trial. The juror continued to serve for the duration of the trial.

■ Both the decision to declare a mistrial and the decision to grant a continuance are left to the discretion of the trial judge, reversible only upon a showing that the trial judge exceeded this discretion. *Sidener v. State*, (1983) Ind., 446 N.E.2d

965; *Chambers v. State,* (1981) Ind., 422 N.E.2d 1198. We totally agree with the state that the trial judge was in a better position than we to determine whether the juror's illness had any effect on the proceedings. The record shows that the trial judge asked if the juror felt all right; the juror responded affirmatively. Furthermore, the jurors were polled after returning their verdict and each indicated his or her vote was not influenced by the juror's illness. We find no error.

### VIII.

The defendant contends that the evidence was insufficient to support the conviction for receiving stolen property. Specifically, the defendant claims the evidence was insufficient to establish that he knew the property was stolen.

Under our standard for reviewing sufficiency of evidence issues we may consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there exists substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *McAfee v. State,* (1984) Ind., 459 N.E.2d 1186; *Thompson v. State,* (1982) Ind., 441 N.E.2d 192. A guilty verdict may be based solely upon circumstantial evidence. *McAfee v. State; Harris v. State,* (1981) Ind., 425 N.E.2d 112. Contrary to the defendant's assertion, the circumstantial evidence does not have to exclude every reasonable hypothesis of innocence; it is sufficient if from the circumstantial evidence an inference may reasonably be drawn therefrom which supports the finding of the jury. *Thompson v. State.*

The statute here requires that a person knowingly or intentionally receive, retain, or dispose of property of another that has been subject of a theft in order to be found guilty of receiving stolen property. Ind.Code § 35-43-4-2(b) (Burns 1983 Supp.). The defendant has cited a number of cases that hold that the knowledge required under this statute cannot be inferred *solely* from the unexplained possession of recently stolen property. *Johnson v. State,* (1982) Ind.App., 441 N.E.2d 1015; *Mattingly v. State,* (1981) Ind.App., 421 N.E.2d 18; *Anderson v. State,* (1980) Ind. App., 406 N.E.2d 351. In this case, however, the knowledge element was established by more than just the possession of the trailer. The evidence here showed that the defendant told Leo Merkley he could get him a trailer. Shortly thereafter, a trailer was stolen from a construction company that had previously employed the defendant. The day after the trailer was stolen, the defendant sold a trailer to Merkley. The defendant required Merkley to pay $1,250 in cash, and the defendant did not produce a title to the trailer. The defendant did later produce a bill of sale containing apparently fictitious names for the seller and the notary public. Finally, the evidence showed that the serial number on the trailer sold by the defendant was the same as that on the stolen trailer. In short, this is not a case where the only evidence of knowledge was the unexplained possession of stolen property, since the requisite knowledge element could have been inferred from other evidence introduced at trial. Therefore, we cannot now say the evidence was insufficient to support the conviction.

### IX.

The defendant lastly contends the evidence was insufficient to support the finding that he was a habitual offender. The argument presumes that the evidence was insufficient to sustain the conviction on the underlying charge. Since we have already decided that there was sufficient evidence to support the conviction, there is no merit to the defendant's argument here.

For all the foregoing reasons, there was no reversible error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result.