James **FAIR**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 49A04–9207–CR–255.

Court of Appeals of Indiana,
Fourth District.

June 21, 1993.

Andrew W. Swain, Lee & Clark, Indianapolis, for appellant-defendant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

CHEZEM, Judge.

*Case Summary*

Defendant–Appellant, James Fair (Fair), appeals his conviction for Dealing in a

Sawed–Off Shotgun, a class D felony. We affirm.

## Issue

Fair presents two issues for our review, which we consolidate and restate as follows: Whether the trial court properly denied Fair's motion to suppress evidence obtained in a warrantless search of his car.

## Facts and Procedural History

On October 13, 1991, Fair attended a party at the Vantage Point Apartments in Indianapolis. Fair drove a red 1991 Plymouth Acclaim, rented from Enterprise Rental Company, to the party. He parked the car in the guest parking lot of the apartment complex.

Officer Jeffrey Wager of the Indianapolis Police Department was dispatched to the Vantage Point Apartments at 1:20 a.m. in response to gun shots being fired. The dispatcher advised Officer Wager that a suspect was a black male wearing a red baseball cap and blue or gray pants, with a firearm. As he approached the apartments, Officer Wager saw a man in the parking lot who fit the suspect's description. This man was later identified as Fair. He was standing behind a red car with the trunk open and placed a cylindrical object in the trunk.

As Officer Wager pulled into the parking lot, he lost sight of Fair. When Wager saw him again, the trunk was closed and Fair was standing beside the car. Wager parked his squad car and asked Fair to move away from the car. He then performed a pat-down search for weapons on Fair. Officer Wager found six 20–gauge shotgun shells in Fair's pants pocket.

During the pat-down Officer Wager noticed that Fair was intoxicated. He could not stand without supporting himself on the car and had a strong odor of alcoholic beverage on his breath. In addition, Fair exhibited poor manual dexterity when he gave Wager his identification. Officer Wager arrested Fair for public intoxication, handcuffed him and placed him in the police car. Fair told Wager his car was a rental. At this point Wager impounded the car and then performed an inventory search. He took notes of the items in the car and found a sawed-off shotgun in the trunk.

The State charged Fair with Dealing in a Sawed–Off Shotgun,[1] a class D felony. Fair filed a motion to suppress the evidence found by Officer Wager during the search. The trial court held an evidentiary hearing and denied Fair's motion. A bench trial was held, where Fair renewed his objection to the evidence obtained in the search. The trial court found Fair guilty.

## Discussion and Decision

Fair argues the trial court committed error when it denied his motion to suppress as evidence the shotgun seized from the trunk of his car by Officer Wager.

Fair acknowledges that a police officer's inventory search of an impounded car pursuant to established police caretaking procedures constitutes an exception to the federal and Indiana constitutional requirement that the police search and seize property under a warrant. *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Rabadi v. State* (1989), Ind., 541 N.E.2d 271. However, he believes the circumstances of his arrest did not justify an impoundment and inventory search. We disagree.

Our supreme court has set forth three (3) reasons for conducting an inventory search: 1) protection of private property in police custody; 2) protection of the police from claims over lost or stolen property; and 3) protection of police from potential danger. *Foulks v. State* (1991), Ind., 582 N.E.2d 374, 376. The State must show that its actions came within the inventory exception and must offer more than the mere statement of a police officer that the search was conducted as a routine inventory. *Isom v. State* (1991), Ind.App., 589 N.E.2d 245, 246, *trans. denied.* The circumstances surrounding the search must also indicate that the search was part of

---

1. I.C. 35–47–5–4.1.

established and routine department procedures consistent with the public policies and interests which underlie such searches. *Id.*

■ The facts show that Officer Wager had probable cause to arrest Fair for public intoxication and took Fair into custody due to his arrest. By reason of Fair's arrest for public intoxication, Officer Wager had a right and a duty to impound his car. *Johnson v. State* (1990), Ind., 553 N.E.2d 477, 479 (police arrested defendant for a shooting at an apartment complex, impounded his car and found controlled substances during inventory search); *Eckstein v. State* (1988), Ind., 526 N.E.2d 693, 694 (police arrested defendant for public intoxication, impounded his bicycle and found stolen property in the bicycle bag during inventory search). Fair argues this is not a legitimate reason to impound his car. He asserts that a car can only be impounded pursuant to a motor-vehicle or forfeiture statute. While these are legitimate reasons to impound a vehicle, they are not the only reasons this court recognizes. An arrest and confinement for public intoxication also justifies impounding a car and conducting an inventory search. *Id.*

■ Officer Wager also testified it was department policy to impound a vehicle belonging to an arrestee and inventory the contents of the vehicle. He stated that he arrested Fair, handcuffed him, and sat him in the back of the squad car. After he determined that the car driven by Fair belonged to a rental company, Wager impounded the car. He then read Fair the *Miranda* warning and conducted the inventory search of the car. R. 98–105. By impounding the car and conducting an inventory search, Officer Wager protected the car, which belonged to Enterprise Rental Company, from potential damage and theft while parked at the apartments. In addition, impounding the car and conducting an inventory of its contents protected the police from claims of lost or stolen property and protected the police and the public from the danger that a loaded shotgun presents.

Fair claims the search was investigative because Officer Wager expected to find a shotgun in the car. Wager testified he expected to find a weapon when he searched the car. This is not an unreasonable expectation in light of the circumstances. Officer Wager responded to a report of gunshots at the apartments and he found shotgun shells in the pocket of Fair, who fit the suspect's description. However, Officer Wager also testified he decided to do the inventory search of the car after he arrested Fair because it was Fair's car. Officer Wager followed IPD policy for the inventory search of an arrested person's car, and we cannot say that his expectation of what he would find in the inventory search changed the nature of that search.

[4] Fair also argues that his car should not have been impounded because it was parked on private property at the apartment complex. We have held that this is only true if the vehicle is parked at the home of the person being arrested. *Johnson v. State*, 553 N.E.2d at 479. Although Fair's rental car was parked on private property, it was not property controlled by Fair. The property manager at Vantage Point Apartments testified that a non-resident vehicle left in the guest parking lot would be towed. If the manager did not have the car towed, it would have remained unattended in the parking lot for at least a day and one half while Fair was in jail. Therefore, impoundment of the car concurrently with Fair's arrest was proper. The trial court did not err in denying Fair's motion to suppress.

Affirmed.

ROBERTSON, J., concurring.

MILLER, J., dissenting with opinion.

MILLER, Judge, dissenting.

I dissent because there can be no "inventory" search of an impounded vehicle *until* the vehicle is impounded and then, *only* if the inventory is a routine police procedure. As the record makes clear, Officer Wager, a Field Training Officer, searched the trunk of Fair's rental car before he im-

pounded it. R. 99, 104–106 *infra*. As noted by the majority and Professor Kerr, if a vehicle is *lawfully* impounded after the operator is arrested, the arresting officer may make an inventory search of the impounded vehicle. *South Dakota v. Opperman* (1976), 428 U.S. 364, 375, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000; *Brown v. State* (1982), Ind., 442 N.E.2d 1109, 1116; William A. Kerr 16 *Indiana Practice* § 3.4 (1992 supp.). Once a vehicle is lawfully impounded, the police may inventory the vehicle if the procedure used is "conducted by law enforcement officers on a 'routine' basis." *Griffin v. State* (1978), 175 Ind. App. 469, 372 N.E.2d 497, 501; Kerr, *supra*, § 3.4e. The purpose of a valid inventory search is not to recover admissible evidence of criminal activity, its primary purpose is to safeguard the owner's property. *Kerr, supra,* § 3.4e.

The majority seems to imply that because Fair was under arrest, Wager had the unlimited right to search Fair's car. Even the State did not argue such extreme position at the suppression hearing. At the hearing, the State did not claim this was a search incidental to a lawful arrest nor attempt to apply the "automobile exception" to this case, for the good reason that neither applied.

Officer Wager's testimony at the suppression hearing shows that no element of a valid inventory search was present when he searched Fair's vehicle. At the time, Fair was handcuffed and in the back seat of Wager's police car. R. 99. Wager testified that:

Q. Did you walk—when you got that slip, did you walk from Mr. Fair's car back to the police car?

A. Yes I did. An uh—I sat down in the driver's seat of my police car with him in the back seat. Uh, because I had seen him placing something in the trunk and he had shotgun shells, *I made an assumption that there was probably going to be a weapon in the trunk.* So it was at that time that uh—I Mirandized [sic] Mr. Fair and uh—asked him if I could—or I asked him if there were any weapons in the car.

Q. And what did he say?

A. He said uh—he—well to answer the specific question—"is there any weapons in the car?"—he didn't say anything. He just shook his head. An he just said that uh—he didn't do anything.

Q. Then what happened after that?

A. Well, *after that I just decided to do the inventory search for the arrest and since it was his vehicle, I inventory searched his car.*

R. 99 (emphasis added). Wager searched the entire interior of Fair's car and found some marijuana, some empty Colt 45 cans, and a cooler on the back seat. Wager opened the cooler and found some beer. Wager then testified:

A. Uh—I finished searching the interior of the car and didn't find any other contraband or any other property that needed to be noted. *It was at that time I wanted to for the*—look in the trunk and I started looking for the keys. Saw that they were not in the ignition. So at that time I had to walk back over to the police car and I asked Mr. Fair to step out, in which I recovered the keys from his left front pocket.

Q. You hadn't taken them out earlier?

A. No, I hadn't.

Q. O.K., so what happened after that?

A. Uh—I told him that I'd found the marijuana and that he was also under arrest for possession of marijuana. And I placed him back in the car and then went to the trunk of the car and opened it with the key. And when I opened it I saw that there was a shotgun in the trunk on top of some clothing.

Q. Did you ask Mr. Fair for permission to open up the trunk?

A. No sir.

Q. And did he ask you to open the trunk?

A. No sir, he did not.

Q. And did he ask you to safe guard any contents in the trunk?

A. No sir, he did not.

Q. O.K. And did you also do an inventory of—were you searching the trunk to do an inventory?

A. Yes sir.

Q. *Did you do that inventory expecting to find a weapon in that trunk?*

A. *Yes sir, I did.*

\* \* \* \* \* \*

Q. *You were going to impound the car at that time. Is that correct?*

A. Yes sir.

Q. Did Mr. Fair ever ask you to impound it?

A. No sir.

Q. And did you uh—have a warrant for any of these searches that you conducted?

A. No sir, I did not.

R. 104–106 (emphasis added). The majority concludes that the "impoundment of the car concurrently with Fair's arrest was proper." Op. at 491. Wager's own words do not support their conclusion.

In regard to the second element of a valid inventory search, Wager testified on direct examination:

Q. And were you following any set procedures set down by—uh—the Indianapolis Police Department for inventory [of] the car?

A. Yes sir, I was.

R. 106. The majority finds that this testimony shows Wager was following the "routine" procedure of the Indianapolis Police Department when he searched Fair's car before impounding it. I refer the majority to Wager's testimony on cross-examination:

Q. You referred to the Indianapolis Police Department inventory search regarding the trunk and other portions of a car. Can you briefly explain what that—what the Indianapolis Police Department policy is regarding inventory searches?

A. O.K. If we come in contact with someone who has a vehicle—we are to safeguard that vehicle. We're not allowed—we should not leave it anywhere where it might be damaged. So therefore, they request that we impound those vehicles, *so when we do that, we conduct an inventory search of the car to see what kind of items are in it.*

R. 112. It is clear that Wager did not follow *official* Indianapolis Police procedure. He searched the car *before* it was impounded. He conducted an warrantless investigatory search—in the guise of an inventory search—of Fair's car with the stated purpose of finding a weapon. When he finally found the weapon, *then* Wager impounded Fair's car.

Professor Kerr notes that: "If an officer indicates that the actual purpose of an entry or examination of a vehicle is for a different purpose, *such as an investigation to obtain evidence of criminal activity, then the entry or examination cannot be justified as an inventory."* Kerr, *supra*, § 3.4(e) at 300 *citing Rabadi v. State* (1989), Ind., 541 N.E.2d 271, 274–275 (an inventory was not made under routine procedures when it was made to "inventory any evidence that was recovered."); *Snuffer v. State* (1984), Ind.App., 461 N.E.2d 150, 153 n. 4 (emphasis added).[2]

In *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, the Supreme

---

2. Professor Kerr also observed that:

In order to assure that an inventory is conducted for a proper purpose, the Indiana appellate courts emphasize that an inventory is a procedure that is conducted by law enforcement officers on a 'routine' basis. (Citations omitted). As stated by the court in *Griffin v. State* [*supra*],

Further, the inventory search was routine. Where the search is routine it is limited by its purpose, i.e., protecting the owner's property and avoiding the occasional danger that may arise in impounding an unsearched vehicle. In addition, the necessity of procuring a warrant is greatly diminished because the inventory is not conducted to uncover crime; there is 'no significant danger of hindsight justification' for the search, and there is no discretion in the arresting officer as to whether a search is required.... *Id.* at 501.

Kerr, *supra*, § 3.4(e) at 300.

Court applied the judicially-created federal exclusionary rule to the states, holding that "all evidence obtained by searches and seizures in violation of the Constitution is ... inadmissible in a state court." *Id.* at 655, 81 S.Ct. at 1691. Indiana adopted the exclusionary rule thirty-eight years before *Mapp* in *Callender v. State* (1923), 193 Ind. 91, 138 N.E. 817, and prohibited the admission of evidence seized in violation of Article 1, section 11 of the Indiana Constitution.

Under either the Federal or Indiana constitutions, Wager unconstitutionally searched Fair's vehicle.[3] The evidence seized should be suppressed. The trial court and the majority have erred. I would reverse.

**3.** I wish to point out that if Wager wanted to get a warrant, there was probable cause to obtain one. He had the shotshells and had seen Fair put something long and cylindrical into the trunk of the car. The State does not argue the presence of any exigent circumstances that would justify a warrantless search. It is clear the Wager was going to find that shotgun, one way or another. The way he chose is unconstitutional.