Anthony PATTERSON and Michael
Hobbs, Appellants (Defendants
Below)

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 578S86.

Supreme Court of Indiana.

March 20, 1979.

Harriette Bailey Conn, Public Defender, David P. Freund, Marcia L. Dumond, Deputy Public Defenders, Indianapolis, for appellants.

Theodore L. Sendak, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendants (Appellants) were jointly tried by jury on charges stemming from the robbery of the Heights Finance Company. Hobbs was convicted of the commission of a felony while armed, to-wit: robbery, Ind. Code § 35–12–1–1 (Burns 1975), for which he was sentenced to fifteen (15) years imprisonment, and conspiracy to commit a felony, Ind. Code § 35–1–111–1 (Burns 1975), for which he was sentenced to an indetermi-

nate term of two (2) to fourteen (14) years imprisonment, the sentences to run concurrently. Patterson was convicted of conspiracy to commit a felony for which he was sentenced to an indeterminate term of two (2) to fourteen (14) years imprisonment. On appeal they raise the following issues:

(1) Whether the trial court erred in overruling the defendants' motion to suppress certain items seized during a search of the automobile in which they were riding, and in subsequently admitting the evidence at trial.

(2) Whether the trial court erred in failing to suppress an in-court identification of Hobbs.

(3) Whether the trial court erred in refusing to appoint separate counsel for each defendant.

(4) Whether there was sufficient evidence presented to sustain the defendants' convictions.

(5) Whether the trial court erred in sentencing Hobbs on his convictions for conspiracy to commit a felony and for commission of a felony while armed.

\* \* \* \* \* \*

## ISSUE I

At approximately 10:00 a. m., on February 11, 1977, two men armed with guns, entered the Heights Finance Company demanding money. They ordered one employee into the closing booth, and after taking $550 from a second employee, ordered her into the restroom.

Within a few minutes thereafter, Officer Graff, who was on patrol, received a radio report concerning the robbery, wherein it was stated that the bandits were two black males, about six feet in height, one of whom was wearing a light brown coat. Officer Graff proceeded to the general area of the robbery. He was within a few blocks of the finance company when he saw a brown automobile pull out from the curb. The automobile, bearing out-of-county license plates, turned the corner and accelerated briefly and slowed to a normal speed. Officer Graff decided to stop the automobile, not because any traffic laws had been bro-

ken, but because of its plates and because he saw three black men inside. Walking to the car, Officer Graff noticed that the driver, later identified as Defendant-Patterson, was sweating heavily, despite the thirty to forty degree temperature. He asked Patterson for identification and was given identification for Percy Cyrus who was known to Graff and who was sitting in the back seat of the automobile. Defendant-Hobbs was identified as the third passenger. As he was standing by the car, Graff noticed a light brown or tan jacket and a couple of hats in the back seat. At this point in time he was joined by Officers Biddle and Perkins, and it was decided that the suspects should be taken to the police station, since traffic was being blocked. At the station the three suspects were advised of their rights and asked to empty their pockets which contained large sums of money. Thereupon, the suspects were arrested, and Biddle and Perkins made an inventory search of the car, and found two pistols and several items of dark clothing.

Prior to commencement of the trial, the defendants filed a motion to suppress all of the evidence seized as a result of the search of themselves and the automobile. Following a hearing in which the information above related was presented, the trial court denied the motion and subsequently admitted the articles into evidence over the defendants' objections. On appeal, the defendants challenge not only the validity of the initial stop, but the validity of the subsequent searches as well.

■ "There is nothing automatically unconstitutional in subjecting citizens to a brief detention under circumstances where probable cause for a formal arrest is lacking. (citations omitted). The constitutionality of such detention depends solely upon the reasonableness of the action taken by the police officer." *Luckett v. State,* (1972) 259 Ind. 174, 284 N.E.2d 738, 741. The facts known to the officer at the time of the stop must be such as to warrant a man of reasonable caution in the belief that an investigation is appropriate. *Terry v. Ohio,* (1968)

392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, *Luckett v. State, supra.*

█ In the instant case, the facts known to Officer Graff consisted of information received in a radio report dispatched shortly after the robbery occurred. The suspects were described as two black males of approximately six feet in height, one of which was wearing a tan jacket. Acting solely upon this information within minutes of having received it, and approximately three blocks from the robbery scene, Officer Graff stopped a car bearing out-of-county license plates and carrying three black males.

In *Williams v. State,* (1974) 261 Ind. 547, 307 N.E.2d 457, this Court affirmed a trial court's ruling that a stop which was based upon facts similar to those upon which Graff acted in the instant case, was lawful. There, the officers were informed that a motel had been robbed by two black males who were believed to be heading north. Given those facts, the trial court held that the officers were justified in stopping a single black male driving a car in a northerly direction, fifteen miles from the site of the robbery approximately eighteen minutes after it had occurred.

The majority of this Court found that the facts present in *Williams* constituted a sufficient basis for an investigatory stop. (Justice Hunter concurring in the result, Justice DeBruler and Justice Prentice dissenting.) The officers' actions in this case, as in *Williams,* stretch the outer limits of constitutionality, having been based on the bare minimum of facts which when known to the police would warrant further investigation. The police were given no description of an automobile and only a very general description of the suspects. Upon the authority of *Williams,* the circumstances warranted further investigation.

█ Having determined that the initial stop was justified by the facts then known to the police, we next determine whether the subsequent search of the car and seizure of evidence were lawful. An automobile may be searched without a warrant where there is probable cause to believe that the automobile contains articles that the officers are entitled to seize. *Chambers v. Maroney,* (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, probable cause being defined as facts and circumstances known to the arresting officer which would warrant a man of reasonable caution and prudence in believing that the accused had committed a criminal offense. *Gaddis v. State,* (1977) Ind., 368 N.E.2d 244.

█ Upon stopping the automobile, Officer Graff could see that Patterson was perspiring profusely despite the cool temperature. Upon request for identification he produced identification which the officer knew was not his own. The clothing which was visible in the back seat matched the description of the clothing which had been worn by the robbers. Upon arriving at the station it was learned that each defendant had a large sum of money upon his person. This evidence, in addition to the factors which justified the initial stop, constituted sufficient probable cause to justify the warrantless search of the automobile which resulted in the officers having found two pistols under the front seat. That the search took place at the station rather than at the scene of the stop is of little consequence. As was stated in *Chambers v. Maroney, supra,* 399 U.S. at 52, 90 S.Ct. at 1981:

> "On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained."

## ISSUE II

Approximately one hour after the Heights Finance Company was robbed, an employee, Debbie Axley, was taken to the police station where she was shown three suspects through a one-way mirror. The men were brought in front of the mirror individually at first and made to turn from side to side. Then all three were shown to her at one time. Axley positively identified Hobbs out of the group as one of the robbers. At trial, Hobbs moved to suppress Axley's identification upon the grounds that the pre-trial lineup was unduly suggestive. The trial judge overruled the motion after hearing evidence from Axley.

On appeal, the defendant characterizes the lineup procedure as a one-on-one confrontation. We disagree, however, inasmuch as Axley stated that she was shown three individuals at one time. Although lineups of three or four individuals are not generally considered adequate, *Tewell v. State*, (1976) 264 Ind. 88, 339 N.E.2d 792, absent any other suggestive factors, we fail to see how the lineup was so suggestive as to prevent a reliable identification.

Regardless, however, of any suggestiveness involved, the trial court did not err in overruling the defendant's motion, since an adequate basis was established for her in-court identification independent of the pre-trial procedure. *Carmon v. State*, (1976) Ind., 349 N.E.2d 167; *Swope v. State*, (1975) 263 Ind. 148, 325 N.E.2d 193. Axley testified that both men were without masks when they entered the finance company. Although one later pulled a mask over his face, Hobbs remained without one throughout the robbery. She further stated that she was able to view Hobbs for several minutes and that her in-court identification was based upon her observations at the time of the robbery, "because I looked at him long enough in the closing booth, I don't think I will ever forget his face."

## ISSUE III

Two weeks prior to trial, court-appointed defense counsel filed a motion for the appointment of additional counsel stating:

3. That prior to said trial, or during the trial of these charges, a conflict of interest may arise by virtue of said attorney representing both of these Defendants.

4. That said attorney believes another attorney should be immediately appointed to represent one of the Co-Defendants in order that should these Defendants develop a conflicting position, the trial of this case will not be postponed.

5. That said attorney also believes that he could not (if he found it necessary or was requested to do so) actively engage in plea-bargaining on behalf of one Defendant, when such plea-bargaining may be detrimental to the other Defendant.

After hearing arguments on the matters set forth in the motion and examining the records in the cause, the trial judge stated that he could find no adequate reason for the appointment of additional counsel and the motion was denied. These proceedings apparently were not recorded, as there is no transcript thereof in the record.

The defendants contend that the trial court erred in denying their motion, relying on *Holloway v. Arkansas*, (1978) U.S., 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426, as authority for their position. In *Holloway* the trial court appointed a public defender, Harold Hall, to represent three defendants charged with robbery and rape. Hall filed a pre-trial motion for the appointment of separate counsel for each defendant stating that there was a possibility that a conflict of interest might arise. After a hearing held on the motion, the transcript of which was not included in the record, it was denied. Three weeks later, before the jury was empaneled, Hall renewed the motion "on the grounds that one or two of the defendants may testify and if they do, then I will not be able to cross-examine them because I have received confidential information from them." Once again, the motion was denied. Thereafter, throughout the trial, Hall made repeated attempts to bring the situation to the court's attention, such as in the following instance:

"When Welch (a co-defendant) denied, from the stand, that he was at the restaurant the night of the robbery, Holloway (a co-defendant) interrupted, asking:

'Your Honor, are we allowed to make an objection?

'THE COURT: No, sir. Your counsel will take care of any objections.

'MR. HALL: Your Honor, that is what I am trying to say. I can't cross-examine them.

'THE COURT: You proceed like I tell you to Mr. Hall. You have no right to cross-examine your own witnesses anyhow.' " 98 S.Ct. at 1177.

On appeal from the Arkansas Supreme Court's affirmance of the defendants' convictions, the United States Supreme Court held that the trial court's failure, either to appoint separate counsel or to take adequate steps to ascertain whether the risk of conflict was too remote to warrant separate counsel, was reversible error where trial counsel had made repeated motions and objections.

■ In discussing what constitutes an adequate inquiry into the remoteness of the risk of conflict, Defendants draw our attention to the Supreme Court's determination in *Holloway* that the trial judge had not taken adequate steps, despite his having held a hearing upon the motion prior to its denial, as was done in the instant case. While this is true, it must also be pointed out that the adequacy of the inquiry must be judged in the light of the individual situation and the likelihood that a conflict will arise. As the Court stated at 98 S.Ct. 1180:

"When an untimely motion for separate counsel is made for dilatory purposes, our holding does not impair the trial court's ability to deal with counsel who resort to such tactics * * * Nor does our holding preclude a trial court from exploring the adequacy of the basis of defense counsel's representations regarding a conflict of interests without improperly requiring disclosure of the confidential communications of the client * * * In this case the trial court simply failed to take adequate steps in response to the repeated motions."

■ In the case at bar, the defendants made one motion prior to trial, which was denied after hearing. They have failed to provide us with a transcript of the hearing, and nowhere in their brief do they make reference to the actual existence of a conflict warranting the appointment of separate counsel. Unlike *Holloway*, where counsel's inability to cross-examine the defendants who testified in their own behalf was readily apparent from a reading of the record, as well as from counsel's repeated representations to the court, no such conflict is apparent here. Although *Holloway* does hold that once the reviewing Court has found that the trial court has improperly required joint representation over timely objection, reversal is automatic without a showing that the defendant has been prejudiced by the alleged conflict of interests, it must first be shown that the trial court's actions were improper. This, the defendants have failed to do.

## ISSUE IV

■ The defendants challenge the sufficiency of the evidence to support either of their convictions. When making a sufficiency determination, as a court of review, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Beasley v. State*, (1977) Ind., 370 N.E.2d 360. The decision of the trier of fact will be upheld if the evidence, as viewed most favorably to the State along with all reasonable inferences to be drawn therefrom, is sufficient to establish each of the elements of the crime charged beyond a reasonable doubt. *Baum v. State*, (1976) 264 Ind. 421, 345 N.E.2d 831.

The evidence as viewed in that light, discloses that two black males robbed a finance company. One of the men was positively identified as Defendant-Hobbs. An employee of the company was able to give a general description of the clothing worn and the guns used. Approximately $550 was taken. Shortly after the robbery, an

officer stopped an automobile within blocks of the robbery. The driver, Defendant-Patterson, was heavily sweating and produced identification other than his own. Hobbs was a passenger in the vehicle. Approximately $590 was found on the three individuals. In the automobile officers found two guns and clothing similar to that worn by the robbers.

 The defendants contend with regard to their conspiracy convictions, that the evidence fails to establish anything more than an association. We disagree. A conviction of conspiracy may be based solely upon circumstantial evidence. There need be no showing of an express agreement between the parties, as a conspiracy may be inferred from acts done in pursuance of a common unlawful purpose. *Lane v. State*, (1972) 259 Ind. 468, 288 N.E.2d 258. The jury could reasonably have inferred from the evidence presented that the defendants had agreed to rob the finance company and divide the money between them.

Defendant-Hobbs concedes in his brief that his argument, with respect to his conviction of commission of a felony while armed, rests solely upon our determination of Issues I and II. As we have found that the evidence seized from the automobile and the identification testimony were both properly admitted, we need not discuss this issue further, other than to say that sufficient evidence was introduced to support the conviction.

## ISSUE V

 The trial court entered judgment and sentence on Hobbs' convictions for commission of a felony while armed and for conspiracy to commit a felony. Hobbs contends that it was error for the trial court to have sentenced him on both convictions since each offense arose out of a single transaction, citing *Elmore v. State*, (1978) Ind.App., 375 N.E.2d 660. In *Elmore* the Court of Appeals found that the defendant's convictions for theft and conspiracy to commit theft could not both stand since the facts giving rise to each offense were not independently supportable, separate and distinct. The Court of Appeals decision, however, was vacated by this Court in *Elmore v. State*, (1978) Ind., 65 Ind.Dec. 397, 382 N.E.2d 893, where we stated:

" 'The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which, the other does not.' *Blockburger v. United States*, (1932) 284 U.S. 299, 304, 52 S.Ct. 180, 182, 75 L.Ed. 306, 309." 382 N.E.2d at 895.

Since each offense of which the defendant, Hobbs, was convicted requires proof of facts which the other does not, they are not the same offense.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.