Edward MURRELL, Appellant,

v.

STATE of Indiana, Appellee.

No. 680S168.

Supreme Court of Indiana.

June 17, 1981.

Geoffrey A. Rivers, Muncie, for appellant.

Theodore L. Sendak, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant Murrell was convicted of robbery while armed, class B felony, in violation of Ind.Code § 35–42–5–1. The trial was by jury and an executed sentence of twelve years was imposed. The information charged that appellant along with Robert Harrington took property from the presence of a clerk of a Village Pantry Grocery Store in Muncie, Indiana at knife point.

In the early morning hours of September 26, 1979, at about 1:40 a. m., Campbell, a Muncie city police officer, pulled abreast of a Buick automobile at a stop light at the corner of 26th and Madison Streets in Muncie, Indiana, in his patrol car, and observed two men inside and noticed that it bore an Indianapolis license plate having a prefix of "99". His suspicions aroused, the officer proceeded past the car to 12th and Madison and circled back and proceeded again down Madison to the corner of 26th and Madison where he observed a man in a brown shirt in the Village Pantry Grocery Store there. The officer parked his car at a nearby filling station where he could observe the inside of the store. The man looked out of the window at the police officer and made several trips from the counter to the door and back, and finally left with a brown sack in hand. There was no car in the grocery store lot. The officers then left the area to aid in another matter.

Thirty minutes later at 2:00 a. m., Campbell received a radio report that the same Village Pantry had been robbed by two men, one wearing a brown jacket and the other a blue shirt. Muncie officer Gregory reported by radio from Monroe and 6th Streets in the city that he was stopping a car with two men meeting the description of the two bandits. Campbell drove immediately to that location, and saw police cars and a brown Buick with a license plate bearing a "99" prefix which looked like the one he had previously seen. He saw a man in a brown shirt going toward the house at 602 E. 6th Street and yelled out, "Stop that man." He then approached and arrested him, stating that it was for intoxication as he could smell that he had been drinking alcoholic beverages.

Officer Gregory, the first to spot the two men answering the description of the robbers given in a radio report, followed the Buick in which they were driving and had approached it after it had stopped in front of 602 E. 6th Street. The driver in a blue shirt emerged first and went into the house before the officer could stop him, but the officer did manage to stop and detain the man in the brown shirt. Officer Campbell arrived at about the same moment. The man was patted down for weapons. He was Robert Harrington, codefendant of appellant.

Officers Campbell and Gregory then approached Georgia Coles, the owner of the house, who was standing on the front porch, and asked her if she would call the other man. She did so and appellant wearing a blue shirt came to the front and Officer Campbell, smelling alcohol on his breath, placed him under arrest for intoxication, and upon patting him down took a knife from him. Appellant and Harrington were then taken to the Village Pantry where the clerk identified them as the two robbers

and the knife as the weapon with which they had threatened her. They were then told that they were under arrest for armed robbery. The knife and testimony describing that identification were admitted at trial.

Officer Campbell returned to 602 E. 6th Street and spoke with Georgia Coles. She consented to a search of her house. In a bathroom in the northeast portion of the house, they discovered and seized a sack, envelopes, and money taken in the robbery. These items were admitted at trial.

Appellant unsuccessfully sought to suppress the knife taken from him in the personal search on the porch; the sack, envelopes, and money taken from the bathroom of the house; the oral description and the photograph of the brown sack and pizza in the car, and the evidence of the out-of-court identification of him by the store clerk, and her in-court identification. Suppression of the physical items was sought on the basis that they were the fruits of searches and seizures made by the police in violation of the restrictions imposed upon police action of the sort by the Fourth Amendment and Art. I, § 11, of the Indiana Constitution.

 The search of the person, the car, and the house and the constituent seizures occurring in this case involved intrusions of constitutional dimensions requiring justification. Searches and seizures "conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Katz v. United States*, (1967) 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576. It is undisputed that the police had no warrants authorizing their conduct in this case. When such lack is shown by the accused, the burden is upon the prosecution to show that the police action fell within one of the well delineated exceptions to the warrant requirement. *United States v. Jeffers*, (1951) 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 685; *State v. Smithers*, (1971) 256 Ind. 512, 269 N.E.2d 874.

 The discovery and taking of the knife was successfully shown by the prosecutor to be justified as falling within the exception for searches incident to arrest. "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Chimel v. California*, (1969) 395 U.S. 752, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685. In the present case the arrest was lawful, as the officers immediately effecting it had probable cause to do so, in that they were aware of specific, articulable facts which would warrant a prudent man of reasonable caution in believing that appellant had participated in the robbery of the store. That the officer chose to rely upon intoxication as a basis for the arrest does not vitiate actual probable cause. *Smith v. State*, (1971) 256 Ind. 603, 271 N.E.2d 133. The facts cited above were known to the officers and meet the probable cause standard. A search is "incidental" to an arrest when it can be said that it "is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." *Stoner v. California*, (1969) 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856. Appellant was patted down immediately upon his arrest, and at such time the knife was discovered and seized. The "incidental to the arrest" part of the standard is also met here. The motion to suppress the knife was properly denied.

According to Ms. Coles appellant and Harrington had slept in the house eighty percent of the time during the month immediately preceding the robbery. She also testified however, that the bedrooms were occupied by her son and a boarder when they stayed there and by her daughter and godchild, and that appellant and Harrington might stay at the house for an entire week, or for only three or four days a week.

Ms. Coles kept the house and prepared and paid for the food eaten there and was in complete and firm control of the entire place. She entered all rooms of the house as and when she wished. Appellant was

free to come and go as he wished, but there is no evidence that he had a key to the house or his bedroom to use in his discretion. When appellant was called by Ms. Coles immediately before his arrest, appellant responded obediently. Prior to making the search of the house police officers asked for and received the express consent of Ms. Coles to enter and search it.

■ Under presently applicable constitutional analysis, standing is not a threshold determination to be made separately by the trial court in resolving a claim of this sort. The standing issue has been subsumed within the general search and seizure claim upon its merits, the claim to be resolved upon consideration of whether the claimant has an interest or a legitimate expectation of privacy in the premises searched. *Rakas v. Illinois,* (1978) 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387.

■ The evidence presented was such that it would warrant the trial court in concluding to a high degree of certainty that at the time of the search appellant had no interest in the premises searched. There is no support however for the conclusion that he had no legitimate expectation of privacy in the premises searched at all, protected by the Fourth Amendment and Art. I, § 11, of the Indiana Constitution. However, appellant's personal right in this regard was of such a nature that it was totally defined by and dependent upon the will of Ms. Coles. This personal right was of a very limited nature. She was in full control and management of the space within the house, and appellant acceded to her absolute authority in respect to its use. There was therefore no legitimate expectation of privacy in the premises intruded upon by the police when they searched the house with her consent. The warrantless search did not contravene the constitutional rights of appellant and the items seized in the search were properly permitted to be introduced into evidence.

■ Another exception to the warrant requirements justifies the admission of the evidence seized from appellant's car. When the officers first approached the car it was parked on the public street in front of the Coles residence. Appellant and Harrington were in the process of emerging from it. At that point they had probable cause to believe that it had been used in the robbery, that it had been used to transport stolen property, and that it contained evidence of that crime. They could therefore have lawfully searched the interior of it immediately and without a warrant to do so. *Carroll v. United States,* (1924) 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. This same authority to so search extended to the period at the crime scene after the occupants had been arrested and the automobile itself seized. *Texas v. White,* (1975) 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209; *Colorado v. Bannister,* (1980) —— U.S. ——, 101 S.Ct. 42, 66 L.Ed.2d 142; *Montague v. State,* (1977) 266 Ind. 51, 360 N.E.2d 181. There was no error in refusing to suppress the photograph of the pizza on the rear floor of the car or the testimony describing it.

■ Appellant sought suppression of the store clerk's pre-trial identification of appellant on the night of the robbery at the store and her direct identification of him at trial, on due process grounds. After his arrest at the Coles residence he was handcuffed along with Harrington and immediately transported back to the Village Pantry store, where he was brought up to the window and through it was identified as one of the robbers. Appellant contends that the circumstances were unduly suggestive as he and Harrington were the only Black persons present at the time. In *McPhearson v. State,* (1969) 253 Ind. 254, 253 N.E.2d 226, two men were arrested shortly after the robbery of a gas station and were returned there shortly after the robbery, displayed to the attendant who had been robbed, and were positively identified by him. Both men at this show-up were Black. This Court concluded that the identification procedure followed in that case had not been unduly suggestive and did not suggest a violation of due process. No more is presented in the circumstances of this case than was presented in *McPhearson.* Evidence of the out-of-court identifi-

cation at the store, and the clerk's in-trial identification of appellant were not subject to exclusion on the basis of the police procedures employed.

The conviction is affirmed.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

PIVARNIK, J., concurs in result.