· Issa RABADI, Appellant,

v.

STATE of Indiana, Appellee.

No. 18S00–8708–CR–787.

Supreme Court of Indiana.

July 21, 1989.

William G. Bruns, Cannon & Bruns, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

In a jury trial in the Delaware Circuit Court, Issa Rabadi was convicted of attempted murder, a Class A felony. I.C. 35–41–5–1; I.C. 35–42–1–1(1). He was sentenced to the maximum sentence of fifty years, a thirty-year presumptive sentence enhanced by twenty years for aggravating circumstances. I.C. 35–38–1–7; I.C. 35–50–2–4.

Appellant raises five issues on appeal. He maintains that the trial court erroneously failed to grant his motion for a continuance for four days due to the absence of an alibi witness, that it committed reversible error by admitting evidence unlawfully obtained in a warrantless search of his car, that it erred in refusing to allow two alibi witnesses to testify at his sentencing hearing, that the trial court failed to consider and properly weigh certain mitigating circumstances in determining sentence and that it wrongfully considered his failure to appear at an extradition hearing as an aggravating circumstance.

The facts of the case that tend to support the verdict indicate that appellant came to visit the victim, Victor Rabadi, on May 13, 1986 at his home south of Muncie. Both men are originally from Jordan, and when they met, appellant grabbed Victor and kissed him, announcing that he was a nephew of Victor's sister-in-law and wanted to know about work possibilities in Muncie. Victor fixed appellant a cup of coffee, the two chatted, Victor left for a short time to have his truck repaired, returned and took appellant out to lunch at a local restaurant. Shortly thereafter, appellant left for his home in Chicago in his brown Buick Skylark which had his name, "Issa," on the trunk.

Three days later, on May 16, appellant appeared again at Victor's house near Muncie shortly after 7:00 a.m. He was accompanied by a black man referred to only as "Jim," who appellant said was interested in buying Victor's camper which had been for sale. Victor fixed the three of them coffee which they drank outside. They inspected the camper which was in the driveway. Jim went inside the camper, and, at this point, a neighbor drove by and saw Victor and a dark-skinned man with "dark wavy curly hair" standing in the driveway. Jim paid Victor fifty dollars as deposit on the camper and said he would return later when he could get a friend with a pick-up truck to come haul the camper for him. Jim and appellant left around 9:00 a.m. and returned about fifteen minutes later, saying their car had overheated and that they needed some water. After getting two buckets of water from the victim, appellant asked for a glass of water and both he and Jim entered the house. Shortly thereafter, Jim hit the victim with a claw hammer in the head and appellant stabbed him numerous times in the chest and abdomen. Victor was dragged into his kitchen where his throat was cut. The cords on his telephones were severed. After appellant and his accomplice had left and Victor regained consciousness, he managed to get to his neighbor's garage where he called for help.

At trial, appellant testified on his own behalf and described his trip to Muncie on May 13. This testimony agreed with the testimony of the victim describing the events of that day. Appellant, however, denied being at Victor's house on May 16, the day of the attack, and presented alibi witnesses which placed him in Chicago at 7:00 a.m. and after 11:00 a.m. on the day of the assault. He also presented evidence that the drive from Chicago to Muncie took three hours and forty-five minutes. One witness, who could corroborate appellant's story that he was in Chicago at the time the attempted murder actually took place, did not show up for the trial. At the

sentencing hearing, appellant attempted to introduce the testimony of this witness and one other who could have placed him in Chicago at the time of the crime. The court refused to hear such testimony.

We turn first to the constitutional issue of whether the trial court committed error by improperly admitting evidence from an illegal search of appellant's car while it was impounded.

Appellant was arrested in Chicago on May 19, 1986, while driving in his car. The car was impounded by the Chicago police. A search of the car was conducted three days later on May 22, by Detective John Smith of the Chicago Police Department, who testified at trial. It yielded a knife, a tire iron, a map of Indiana with Muncie underlined in pen, a piece of paper with the victim's name and address on it, a wedding invitation, and a bank statement of appellant's account at a Chicago bank showing a balance of around $4000. After establishing that no warrant had issued from Delaware County or Chicago for the search, defense counsel objected to the admission into evidence of any of the items seized in the search on the grounds that they were taken in violation of appellant's constitutional right under the Fourth Amendment to be free from unreasonable searches and seizures. The trial court admitted all the items, ruling that they were lawfully seized as part of an inventory of appellant's car.

The Fourth Amendment to the United States Constitution requires as a general rule that searches of private property be both reasonable and carried out pursuant to a properly issued search warrant. *Arkansas v. Sanders*, 442 U.S. 753, 758, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235, 241 (1979); *Robles v. State* (1987), Ind., 510 N.E.2d 660; *Stallings v. State* (1987), Ind., 508 N.E.2d 550. The warrant requirement is nearly absolute, but on occasion the public interest demands greater flexibility than is offered by the constitutional mandate and therefore a "few jealously and carefully drawn exceptions" have been made to the rule. *Sanders*, 442 U.S. at 759, 99 S.Ct. at 2590–2591, 61 L.Ed.2d at 242. The burden of showing that a warrantless search was

conducted within the confines of one of the exceptions to the warrant requirement is upon the state. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Fyock v. State* (1982), Ind., 436 N.E.2d 1089. Some of these exceptions concern searches of automobiles and the rationale for them centers on the lowered expectations of privacy that an individual has in his vehicle and its mobility. Other concerns that may support warrantless searches are police and public safety, the potential liability of police for lost or stolen items temporarily in their possession, protection of an arrestee's possessions, and the risk of destruction or loss of evidence as well as other exigent circumstances.

Thus an exception to the warrant requirement has been made for routine inventory searches of impounded automobiles conducted pursuant to established police caretaking procedures. This was first recognized by the Supreme Court in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) and by this Court in *Dixon v. State* (1982), Ind., 437 N.E.2d 1318. Three of the needs cited above support the rationale for the exception: protection of private property in police custody, protection of police from claims over lost or stolen property and protection of police from potential danger. *Opperman*, 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005. Probable cause is not an issue in such inventory searches because of the non-criminal context in which they occur. See *Opperman*, 428 U.S. at 370 n. 5, 96 S.Ct. at 3097 n. 5, 49 L.Ed.2d at 1006 n. 5. When an inventory is carried out in accordance with routine police procedures, there is an assurance that the intrusion will not exceed the scope necessary to fulfill these caretaking needs. However if the inventory is not conducted as a matter of routine department policy to fulfill the caretaking functions, the risk that it is being used as a mere pretext to conceal an investigatory police motive becomes too great. This type of warrantless search is unreasonable as we recognized in *Paschall v. State* (1988), Ind., 523 N.E.2d 1359.

■ Here, the State failed to meet its burden of demonstrating that the items from appellant's car were seized in the course of a routine inventory of his automobile. On direct examination, Detective Smith testified that he worked in the violent crime division of the Chicago Police Department and that there had been a request from the Delaware County Police Department to search appellant's automobile. Smith also stated that appellant was arrested while driving the vehicle, which was impounded, and that as a matter of general procedure, vehicles that are impounded are searched. Later, he stated that he had gone to the auto pound to "inventory any evidence that was recovered." On cross-examination, Smith indicated that he had not taken part in appellant's arrest, that the search had taken place three days after the arrest and that appellant had shown up at the pound to get his car while the search was being conducted.

Characterizing a search conducted under the circumstances here as a routine inventory would open the door to unbridled intrusion by the state into those interests protected by the Fourth Amendment. It stretches credulity too far to suggest that sending a detective from a police department's violent crime division, upon the request of another police department that a search be conducted, to "inventory any evidence" found in a car three days after it was impounded, was merely part of routine police caretaking procedures. The interests protected by the inventory exception to the warrant requirement were moot by the time the search here was conducted and inventory was simply a masquerade for a warrantless search for evidence. To make its required showing that its actions come within the inventory exception, the state must do more than offer the mere statement of a police detective that the search was conducted as a routine inventory. The circumstances surrounding the intrusion must also indicate that the search was part of established and routine department procedures which are consistent with the protection of the police from potential danger and false claims of lost or stolen property and the protection of the property of those arrested. Here, as stated, the circumstances do not so indicate.

■ Still, other exceptions to the warrant requirement exist. Where there is probable cause to believe that a vehicle was used in the commission of a crime and contains evidence, a search of the impounded vehicle may be conducted after the arrest at the police station. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Patterson v. State* (1979), 270 Ind. 469, 386 N.E.2d 936. Additionally, a warrantless search of an automobile may be conducted during the course of an arrest under the exception which allows a search of the immediate area within the control of the person being arrested. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Murrell v. State* (1981), Ind., 421 N.E.2d 638. Here the State has sought refuge only under the umbrella of the inventory exception to the Fourth Amendment's warrant requirement, as its brief argument on this issue does not address the possibility of the evidence being admissible under these other exceptions. Even so, the evidence presented at trial would not have been sufficient to support admissibility under these theories.

■ The State did not present the testimony of any of the officers involved in the arrest and apprehension of appellant. It merely presented the hearsay testimony of Detective Smith that appellant was arrested while in his car, which Smith claimed was impounded as evidence. Obviously, without the testimony of an arresting officer there can be no showing that a search was conducted incident to appellant's arrest, and furthermore, a search conducted three days after an arrest could hardly be considered as incident to that arrest; nor can it be said there is sufficient evidence to support a finding that Detective Smith had probable cause to search appellant's car after it had been impounded. In *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), it was held that a delay of a week in the search of an automobile that had been seized as evidence pursuant to a state statute was not invalid for lack

of a warrant. More recently, in *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), a delay of one day in the warrantless search of containers seized from an impounded automobile was held not unreasonable. However in both cases the validity of the search rested upon the fact that there was probable cause to believe the vehicles contained evidence when they were seized, and the state showed that they were impounded for that reason. Here the State made no showing that the appellant's automobile was linked to the crime or was believed to contain evidence when it was impounded, other than Detective Smith's hearsay assertion that it was seized as evidence. None of the many Delaware County Police personnel that testified offered any facts concerning their request for a search. Consequently, it is impossible to determine whether the car was impounded to avoid leaving it on the street after appellant's arrest or because there was reasonable cause to believe it contained evidence and was involved in the crime for which appellant was arrested, and no attempt was made by the State to demonstrate there was probable cause for the search.

In short, as stated above, the burden was on the State to demonstrate at trial that the warrantless search fell into one of the recognized exceptions to the warrant requirement. It is not upon this Court to make such a showing for the State on appeal. We feel that burden requires more than a mere recitation by a police detective, with no personal knowledge of a defendant's arrest, that a vehicle was impounded as evidence, an assertion tantamount to saying, "We had probable cause to believe the vehicle contained evidence." Such a statement is merely a recitation of the hypothesis that must be proved. To satisfy the probable cause requirement there must be more, namely objective facts introduced at trial which support such an assertion. Here there were none and therefore the evidence was improperly admitted. We are thus required to determine whether such admission was reversible error.

A constitutional error in improperly admitted evidence does not require reversal of a conviction where the admission was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1985); *Greer v. State* (1969), 252 Ind. 20, 245 N.E.2d 158. If the error compelled the defendant to take the stand or substantially restricted the choice of defense tactics, the error is not harmless and requires reversal. *Id.* On the other hand, where the reviewing court can state beyond a reasonable doubt that the improperly admitted evidence did not contribute to the jury's guilty verdict, then the error is harmless. *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988); *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710–711. Here we are convinced that the admission of the illegally seized items did not force appellant to take the stand or change his defense tactics, nor did it influence the jury's verdict, and therefore the improper admission was harmless.

Appellant's testimony did not address the illegally obtained evidence presented by the State, but was directed wholly toward establishing the alibi that he was in Chicago when the attempted murder took place. A notice of alibi was timely filed by the defense. It therefore cannot be said that appellant was forced to take the stand to rebut the evidence or that his defense tactics were altered because of its impermissible admission. Furthermore, it is clear that the jury's verdict rested on the credibility of the victim's testimony and the illegally obtained evidence had little or no effect on his version of the events. The map and paper with the victim's name and address supported both appellant's and the victim's testimony that appellant had visited the victim three days before the crime. While the knife found in the car would be consistent with a stabbing, it showed no traces of blood and was far less connected to the crime than was a knife covered with blood that was found at the victim's house and also introduced into evidence. The introduction of the tire iron was actually inconsistent with the victim's testimony

that he was struck with a claw hammer, but was not objected to on relevancy grounds. The wedding invitation was irrelevant to either version of the events as was appellant's bank statement. While there is a hint in the record that appellant may have been hired to kill the victim, and while the bank statement with a $4000 balance might be slightly probative of this theory, this aspect of the State's case was never even partially explored in the record before us. We can therefore state beyond a reasonable doubt that the jury, faced with two conflicting stories, chose to believe the victim on the basis of his detailed account of appellant's attempt to murder him and did not rely on the illegally obtained evidence that the State was improperly permitted to introduce at trial.

 Appellant also claims that the trial court erred by not granting a continuance for four days due to the absence of a witness. The record shows that defense counsel filed a verified motion requesting a continuance for four days to secure the attendance of an alibi witness. This occurred around noon on February 25. The trial court granted the continuance but only until the next day at 9:00 a.m. At that time, defense counsel stated, "Judge, our witness, Max Rabadi, isn't here but we are ready to proceed." The trial court then asked both the State and the defense if they wanted a warrant issued for the witness who was under a subpoena to appear. Both sides declined the offer. Absent fundamental error, a question may not be raised on appeal unless a timely and proper objection was made at trial. *Wiseman v. State* (1988), Ind., 521 N.E.2d 942. No objection was made here. In fact, defense counsel openly consented to resuming the trial after the first continuance had run its course. There is no fundamental error here, and we therefore do not reach the merits of the claim.

 At the sentencing hearing, the court refused to allow appellant to present two witnesses. One of these witnesses was Max Rabadi who failed to appear at trial. The court questioned both witnesses and the defense counsel indicated they were only there to testify that appellant was in Chicago at the time of the crime, in other words, as alibi witnesses. The court barred their testimony as irrelevant to sentencing. The laws concerning felony sentencing provide that the court must conduct a hearing "to consider the facts and circumstances relevant to sentencing," and appellant is entitled to "call witnesses and to present information in his own behalf." I.C. 35-38-1-3. It goes without saying that such information must be relevant to the considerations of sentencing and would not include facts concerning a defendant's innocence which is the focus of the trial process. The sentencing scheme and considerations delineated by I.C. 35-38-1-7 indicate that the focus of the court's inquiry at sentencing is on the nature and seriousness of the crime, the defendant's character and history and the impact of the crime on the victim. The admission of testimony at the hearing is at the discretion of the court. *Jones v. State* (1981), Ind., 422 N.E.2d 1197. Here the testimony of the two excluded witnesses would clearly have been irrelevant to the considerations at sentencing and therefore there was no abuse of discretion.

 Appellant has also complained of irregularities in the sentencing hearing and claims these irregularities resulted in an excessive and unreasonable sentence. He maintains the court did not take into consideration his lack of prior criminal record as a mitigating factor and that it did not make a detailed statement of the reasons it imposed the maximum sentence. A sentencing court must make a record of the sentencing hearing. I.C. 35-38-1-3. If the court finds aggravating and mitigating circumstances, the record must contain "a statement of the court's reasons for selecting the sentence that it imposes." *Id.* This requirement is not satisfied by a mere recitation of the conclusory statutory language enumerating the mitigating and aggravating circumstances. *Dudley v. State* (1985), Ind., 480 N.E.2d 881. The statement should not only list the significant mitigating and aggravating circumstances but should contain specific facts and rea-

sons supporting each circumstance found and an articulation showing that the mitigators and aggravators have been weighed and balanced in determining the sentence. *Wilkins v. State* (1986), Ind., 500 N.E.2d 747. Where there is no written statement satisfying the statutory requirement, but the record indicates that the court engaged in the required evaluative processes and the sentence is not manifestly unreasonable, "then the purposes underlying the specificity requirement have been satisfied." *Henderson v. State* (1986), Ind., 489 N.E.2d 68, 72.

 Here the court's statement made at the sentencing hearing indicates that it engaged in the required weighing and balancing. The court did not merely recite the statutory aggravators and mitigators, but detailed specific facts concerning the crime and appellant's character. While the court's statements as to appellant's prior criminal history are somewhat equivocal, on the whole, the record indicates that it was taken into account and given little or no weight. The court's statement satisfied the purposes underlying the specificity requirement. Further, the sentence was not manifestly unreasonable. To come within that category, it must be such that no reasonable person could find it appropriate for the particular offense and defendant. *Tucker v. State* (1983), Ind., 443 N.E.2d 840. Considering the serious nature of the crime here, we cannot say the sentence was manifestly unreasonable.

Finally, the record does not support appellant's contention that the court improperly considered his failure to appear at an extradition hearing in Chicago as an aggravating circumstance. Without reaching the question of whether such evidence could properly be considered an aggravating circumstance, we simply note that the court stated specifically in the record that it was not considering that particular evidence in determining sentence and its statement as a whole supports this assertion. Therefore, the argument fails.

The conviction is affirmed, and appellant's request for oral argument is denied.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

GIVAN, J., concurs in result with separate opinion.

GIVAN, Justice, concurring in result.

I concur in the result only in this case. I do not agree with the majority observation that the search of appellant's automobile was improper. Based upon the facts and authorities cited in the majority opinion, I would hold that the search was a proper inventory search of an impounded automobile.